Pabst Air Conditioning Corp. v. Commissioner.
Pabst Air Conditioning Corp. v. Commissioner
Docket No. 13635.
United States Tax Court
1948 Tax Ct. Memo LEXIS 112; 7 T.C.M. (CCH) 580; T.C.M. (RIA) 48166; August 20, 1948
*112 Louis Brockman, Esq., 60 East 42nd Street, New York, N. Y. (Gustave Simons, 60 East 42nd Street, New York, N. Y., with him on the brief) for the petitioner. Conway N. Kitchen, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined deficiencies in declared value excess profits tax and excess profits tax amounting to $394.01 and $12,443.47, respectively, for the calendar year 1943 and in excess profits tax amounting to $22,781.02 for the calendar year 1944. These deficiencies resulted from the Commissioner's finding that the salary of $26,000 paid by petitioner to Charles S. Pabst, its president and sole stockholder, in each of the two taxable years, was excessive in each year in the amount of $14,000, and that the salary paid to Martha A. Pabst, secretary-treasurer of the petitioner and wife of the said Charles A. Pabst, of $5,200 paid during each of these years was excessive in each year in the amount of $2,200. Findings of Fact The petitioner is a corporation organized under the laws of New York with its principal office in New York City. It filed the income tax returns involved herein with the collector *113 of internal revenue for the first district of New York. Its books and income tax returns were based upon the accrual method of accounting. It was organized in 1937 and has been engaged in the installation of air conditioning and ventilation equipment. In the taxable years involved it claimed deductions from gross income for officers salaries of $26,000 paid to Charles S. Pabst, president and sole stockholder, and $5,200 paid to Martha A. Pabst, his wife and secretary-treasurer. Of these amounts the Commissioner disallowed $14,000 and $2,200, respectively. Until 1943 petitioner's poard of directors consisted of Charles S. Pabst, Martha A. Pabst and her brother, Oliver Erikson. In 1943 Erikson died and the board has operated with the two remaining members. At the stockholders meeting following incorporation the salaries of the officers were fixed as follows: "President: Seventy-two hundred ($7,200.00) dollars per year. If the profit and loss statement indicates that this salary would unduly burden the financial condition of the corporation, the President shall accept a lesser amount until the corporation's financial condition warrants the above stated salary. "Secretary-Treasurer: *114 Fifty-two hundred ($5,200.00) dollars per annum, as and if permitted by the financial condition of the Corporation, as outlined in the preceding paragraph." The salaries paid by the corporation are as follows: Year
Charles S. Pabst
Martha A. Pabst
1938
$ 4,400.00
$ 250.00
1939
3,900.00
1940
2,975.00
1941
5,425.00
1942
18,000.00
5,000.00
1943
26,000.00
5,200.00
1944
26,000.00
5,200.00
The gross sales, sales allowances, and net sales of the petitioner for the years 1938 to 1944, inclusive, were as follows: Year
Gross Sales
Sales Allowances
Net Sales
1938
$ 44,805.01
$ .64
$ 44,804.37
1939
103,360.32
40.72
103,319.60
1940
52,599.72
0
52,599.72
1941
78,444.70
125.50
78,319.20
1942
216,314.50
393.31
215,921.19
1943
690,278.78
152.51
690,126.27
1944
468,368.70
2,026.79
466,341.91
The petitioner's net income, dividend history, and surplus accounts for the years 1938 to 1944, inclusive, were as follows: Balance
Net Income Before
Net Income
Earned
Special Surplus
Salaries Paid to
After Said
Dividends
Surplus
Post War
Year
Mr. & Mrs. Pabst
Salary Payments
Paid
End of Year
Refund Credit
1938
$ 2,335.51
($ 2,314.49)
None
($ 2,314.49)
1939
4,913.93
13.93 None
( 2,300.56)
1940
2,931.90
( 43.10)
None
( 2,343.66)
1941
6,436.20
11.20 None
( 2,332.46)
1942
44,722.68
21,722.68 None
4,764.22 $ 1,265.84
1943
* 159,261.70
* 128,061.70 None
28,975.57 10,790.43
1944
66,901.34
35,701.34 None
47,012.14 12,201.57
*115 Approximately 90 percent of the gross sales in 1943 and 87 percent in 1944 came from government contracts and/or subcontracts in which the Government furnished priority certificates and of which 50 percent were on a cost-plus basis. The Government contracts consisted of sheet metal installations of ventilation equipment on Army transports Petitioner began this work near the end of 1941 and during 1942 had 50 employees so engaged. This was increased to 160 in 1943 and until the latter part of 1944 when the number was decreased. Charles S. Pabst is a licensed mechanical engineer specializing in air conditioning and ventilating work. He attended night school at Cooper Union for three years but did not obtain a degree. He was licensed in 1939. In 1939 he was elected vice president of the American Asociation of Heating and Ventilating Engineers and became president thereof in 1940. Pabst began working in the heating and ventilating business in 1916. He organized the Adams Engineering Company, Inc., in 1929, of which he was president. He sold his interest in that corporation just prior to the *116 organization of petitioner. The Adams Engineering Company was engaged in what is known as "brokerage air conditioning". It obtained contracts, designed the equipment, and then sublet the work. His salary with this company was as follows: Salary Paid to
Year
Charles S. Pabst
1934
$ 6,500.00
1935
4,224.25
1936
2,810.00
Pabst's duties with petitioner during the taxable years consisted in supervising the shop and installation employees, designing ventilation installations, purchasing materials, and the supervision of installation work on the transports. He searched out prospective jobs and made all estimates. He arranged for the company finances and in 1941 and 1942 personally endorsed the company notes in the amount of $16,500. He gave foremen and shop laborers special training due to the fact that the work on ships differed considerably from installations in buildings. The procurement of materials, even with priority certificates, consumed much of his energies as material was difficult to procure. During 1943 and 1944 he generally arrived at his shop between 7:30 and 9:00 in the morning and remained until 6:00 or 7:00 o'clock at night. He took engineering *117 design work home over practically every week-end in the last half of 1943 and the first quarter of 1944. Occasionally he worked on the transports adjusting grills until two o'clock in the morning. Martha Pabst, as secretary-treasurer of the Adams Engineering Company, received a salary of $1,000 in 1934 and $678.97 in 1935. She was a stenographer and typist and did general office work. While working for the petitioner she also looked after the citizenship papers of the employees who were working on the transports; she purchased war-savings stamps and computed the deductions therefor from the payrolls; she kept the books, although the closing entries were made by a certified public accountant. In 1943 petitioner employed one Zittau and Miss Fusaro to assist in the office work. She procured most of the materials used by petitioner in fabrication as distinguished from the finished equipment which her husband procured; she looked after the payroll, inventory and costs generally. She prepared social security and unemployment insurance reports; she reported for work between seven and nine a.m., and worked until six o'clock practically every night. She worked over holidays and had no vacation. *118 At a special meeting of the stockholders on July 31, 1942, the chairman stated that the existing prosperous condition of the company '* * * was due mainly to the clearsighted management and energetic conduct of operations by Charles S. Pabst, William T. Connolly and Martha A. Pabst; that it was no more than fair that these three individuals be justly compensated not only for their efforts to date but also for the considerable overtime work and heavy demands on their time and energy that appeared to be in prospect, for their skill and devotion to the interests of the Corporation. * * *
"On motion duly made and unanimously carried, a resolution was passed as follows: "RESOLVED, That the yearly compensation of Charles S. Pabst be set at $7,200.00, plus 10% of the total gross business contracted for and billed during each fiscal year beyond $100,000.00 and up to $200,000.00, plus 5% on all such business beyond $200,000.00, with the proviso that his annual salary and bonus combined shall not exceed $26,000.00, and that this amount shall include full remuneration for all overtime work and any other extraordinary services rendered to the Corporation. "Upon further motion duly *119 made and unanimously carried, a resolution was passed, as follows: "RESOLVED, that the yearly compensation of William T. Connolly be set at $4,800.00, plus 3% of the total gross business contracted for and billed during each fiscal year beyond $100,000.00, with the proviso that his annual salary and bonus combined shall not exceed $15,600.00, and that this amount shall include remuneration for all overtime work and any other extraordinary services rendered to the Corporation. "Upon further motion duly made and unanimously carried, a resolution was passed, as follows: "RESOLVED, that the yearly compensation of Martha A. Pabst be set at $5,200.00, with the proviso that this amount shall include remuneration for all overtime work and any other extraordinary services rendered to the Corporation." Payments of $26,000 as salary for Charles S. Pabst in the taxable year 1943 and of $20,000 during the taxable year 1944, and of $5,200 as salary for Martha A. Pabst in 1943 and in 1944, constitute reasonable and necessary items of business expense. Opinion In passing upon the reasonableness of salaries, we can gain little help from judicial precedents. The question is almost wholly *120 one of fact and each corporate employer, of course, has a factual background of its own. As the Court says in : "It is well settled that the question of what constitutes * * * reasonable compensation to a specific officer of a corporation is essentially a question of fact to be determined by the peculiar facts and circumstances in each particular case [list of citations]. These facts and circumstances vary so widely that each corporate tub more or less stands upon its own bottom." It is also recognized that all facts upon which the Commissioner based his determination are presumed to be true and the burden of overcoming this presumption rests upon the corporation. As the Court also says in the Miller case, supra: "A determination by the Commissioner of a reasonable allowance for compensation in a specific case carries a clear presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the Commissioner." After reviewing all of the evidence in this case it is our conclusion that the petitioner has established the *121 reasonableness of the salary deduction for Charles S. Pabst for the year 1943 in the amount of $26,000 and for the year 1944 in the amount of $20,000. Pabst was not only the president of petitioner corporation, but he was also designer, engineer, plant foreman, head of procurement, personnel supervisor over a working force of 160 men during most of the period covered in the taxable year, and, when occasion required, participated in manual labor. He was required first to locate the prospective work and submit estimates on the same. Thereafter he designed the installations, subject to the inspection and approval of Government representatives and the principal contractors. Although in procuring material he had the benefit of priorities, he was still called upon to search out and obtain the materials on a wartime market where such materials were scarce. He also had to employ labor and see that the necessary documents were procured to permit his laborers to work on his particular projects. His employees were all paid time-and-a-half for all time over forty hours per week, while he worked without regard to overtime and occasionally, in adjusting screens in ventilating equipment, until late *122 into the night. He was a man of much experience in ventilating and air conditioning. He began work in ventilating in 1916 and had taken sufficient work at Cooper Union to enable him to become a licensed engineer in that work. He worked in air conditioning in the years prior to 1936, which one witness described as the "pioneer period" in air conditioning, when little profits were made and most of the workers in that field suffered losses. As air conditioning began to show some promise, he organized petitioner corporation and at the initial meeting of its stockholders it was provided that he be paid a substantial fixed salary, subject, however, to the ability of the company to pay such salary from earned income. During the ensuing four years the company was unable to pay the salary as planned, but during those years a foundation was laid which enabled petitioner to function at a substantial profit during the years 1942, 1943 and 1944. At a stockholders meeting in July 1942, following a report of the chairman, which commented on past work of the officers and the desirability of compensating them for their services "to date", salaries of a fixed amount, plus a commission on gross business, *123 were voted. It is interesting to note that at this meeting one of the employees, a sheet metal worker whose activities are not clearly set forth in the record but who was described by Pabst as a union member and a "good man", was voted a basic salary and commission which by computation must have amounted to the limit of $15,600 in both taxable years. The Commissioner directs our attention to the fact that the petitioner paid no dividends. However, it converted a pre-war earned surplus deficit into a substantial earned surplus which was available for post-war conversion. By thus establishing itself on a firm financial basis to continue a post-war business with prospects of a taxable income, the fact that immediate dividends were not declared is not of too great importance. In the two taxable years the relationship of Pabst's compensation to net sales is as follows: (1)
(2)
Ratio
Year
Compensation
Net Sales
of (1) to (2)
1943
$26,000.00
$690,126.27
3.8%
1944
26,000.00
466,341.91
5.6%
Normally the ratio of salary to net sales, as above shown, would be a potent argument for the reasonableness of Pabst's salary as president for both taxable years *124 in view of his multifold activities in addition to those of president of the corporation. However, 90 percent of the sales in 1943 and 87 percent in 1944 were made to the Government. Furthermore, half of these sales were on a cost-plus basis. It is therefore our conclusion that the ratio of salaries to net sales in 1944 is higher than the reasonable requirements of this corporation should call for. It is our conclusion that Pabst's salary in 1944 should be deductible as a reasonable and necessary business expense in the amount of $20,000. In 1943 we find a salary deduction of $26,000 to be a reasonable and necessary business expense. We shall not prolong the discussion of Mrs. Pabst's compensation as secretary-treasurer. In addition to being an executive officer of the corporation, she was a stenographer, bookkeeper, purchasing agent and general office manager. During part of the time she supervised two helpers and for three of the pre-war years during the developmental period of the business she worked for the taxpayer herein for no compensation. This sacrifice on her part was quite properly recognized by the stockholders in July of 1942. We feel that a salary of $5,200 a year paid *125 to Mrs. Pabst was a reasonable and necessary business expense for the taxpayer in 1943 and 1944. Decision will be entered under Rule 50. Footnotes
*. Before reduction of excessive profits of $77,902.60 determined by renegotiation.↩